UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RENEE L.,

                                        Plaintiff,

v.                                                                    5:20-CV-00991 (TWD)


COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC         KENNETH R. HILLER, ESQ.
  *Counsel for Plaintiff*
6000 North Bailey Avenue - Suite 1A
Amherst, New York 14226

U.S. SOCIAL SECURITY ADMIN.                      HUGH DUN RAPPAPORT, ESQ.
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge


## DECISION AND ORDER

Renee L. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial

review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner").  (Dkt. No. 1.)  This case has proceeded in accordance with General Order 18

of this Court.  Both parties filed briefs.  (Dkt. Nos. 21, 24.)  Pursuant to 28 U.S.C. § 636(c),

the parties consented to the disposition of this case by a Magistrate Judge.  (Dkt. Nos. 4, 6.)  For the

reasons set forth below, the Commissioner's decision denying Plaintiff's benefits is affirmed.

## I.      RELEVANT BACKGROUND

### A.      Facts

Plaintiff was born on October 26, 1969, and completed the 10th grade.  (Administrative Transcript at 45, 139.[1])  She previously worked as an assistant manager, cashier, home health aide, and cook.  (T. at 139, 1258-61, 1271.)

### B.      Procedural History

Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits on June 27, 2017, claiming a disability onset date of October 10, 2016, due to fibromyalgia and anxiety.  (T. at 45, 117.)  Her application was initially denied on September 25, 2017, and she requested a hearing before an Administrative Law Judge ("ALJ").  (T. at 58, 68.) ALJ Jeremy G. Eldred held a hearing on May 31, 2019, and Plaintiff testified along with a vocational expert.  (T. at 1252-75.)  At the hearing, Plaintiff amended the alleged onset date to September 30, 2017.  (T. at 1256.)  By decision dated June 20, 2019, the ALJ determined Plaintiff was not disabled, and the Appeals Council denied Plaintiff's request for review on June 30, 2020.  (T. at 1, 178-79.)  She now seeks this Court's review.  (Dkt. No. 1.)

### C.      The ALJ's Decision

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims.  (T. at 10-20.)  The ALJ found Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2020, and that she had not

---

[1] The Administrative Transcript is found at Dkt. Nos. 15 and 20.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.  Page references to other documents identified by docket number are to the page numbers assigned by the Court's CM/ECF electronic filing system.  Unless noted, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

engaged in substantial gainful activity since September 30, 2017, the amended alleged onset date.  (T. at 12.)  Plaintiff has the following "severe" impairments: type II diabetes mellitus with neuropathy, fibromyalgia, anxiety disorder, and depression.  (T. at 12.)  She does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1.  (T. at 13.)  The ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work, with the following additional limitations: "she can perform only simple, routine tasks, can make only simple work-related decisions, and can interact with supervisors, coworkers, or the public no more than occasionally."  (T. at 15.)  She is unable to perform any past relevant work.  (T. at 18.)  Considering Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  (T. at 19.)  Accordingly, the ALJ determined Plaintiff was not disabled, as defined in the Social Security Act, from the alleged amended onset date through the date of decision.  (T. at 20.)

### D.    Parties' Contentions

Plaintiff presents two arguments for the Court's review: (1) the ALJ's reliance on stale opinions has resulted in a disability decision not supported by substantial evidence, and (2) the ALJ's selective adoption of the medical opinion deemed persuasive does not reflect an RFC finding that is supported by substantial evidence.  (Dkt. No. 21-1.)  Defendant counters the ALJ's RFC determination is supported by substantial evidence and, therefore, remand is not warranted.  (Dkt. No. 24.)

## II.    STANDARD OF REVIEW

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d. 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d. Cir. 1987)).  "Substantial evidence" is "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams ex re. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  "To determine [] whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Id*. (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

The Social Security Administration regulations outline a five-step process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further.  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The claimant bears the burden of proof regarding the first four steps.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).  If the claimant meets his or her burden of proof, the burden shifts to the Commissioner at the fifth step to prove the claimant is capable of working.  *Id.*

## III.    RELEVANT RECORD AND OPINION EVIDENCE

### A.    State Agency and Consultative Opinions

Dr. Todd Deneen performed a psychiatric examination of Plaintiff on September 11, 2017.  (T. at 454-60.)  During the consultative examination, Plaintiff discussed her psychiatric and medical history, including a 2015 inpatient psychiatric hospitalization due to anxiety and panic symptoms.  (T. at 454.)  She reported difficulty sleeping, depressive symptoms, a history of suicidal thoughts, irritability, anxiety, history of abuse, panic attacks, and short-term memory deficits.  (T. at 455.)

During the examination, Plaintiff's demeanor was "cooperative", and her social skills were "fair."  (T. at 456.)  Affect and mood were anxious.  (T. at 456.)  She was oriented to person, place, and time.  (T. at 456.)  Her attention and concentration were largely intact but her "recent and remote memory skills were impaired due to possible anxiety and possible working memory deficits."  (T. at 456.)  He intellectual functioning was average, and she demonstrated "fair" judgment and insight.  (T. at 457.)  Dr. Deneen diagnosed Plaintiff with "unspecified depressive disorder" and "panic disorder," and found her prognosis to be "good."  (T. at 458.)

Dr. Deneen opined Plaintiff has no limitation in her ability to understand, remember, and apply simple directions and instructions; use reason and judgment to make work related decisions; sustain an ordinary routine and regular attendance at work; and being aware of normal hazards and taking appropriate precautions.  (T. at 457.)  He determined she has a mild limitation to understand, remember, and apply complex directions and instructions; interact adequately with supervisors, coworkers, and the public; sustain concentration and perform a task at a consistent pace; and maintain personal hygiene and appropriate attire.  (T. at 457.)  Dr. Deneen opined Plaintiff has a moderate limitation with regulating emotions, controlling behavior, and maintaining well-being, noting that Plaintiff's difficulties are "caused by her cognitive defects and anxiety."  (T. at 457-58.)

On September 11, 2017, Plaintiff also underwent an internal medicine examination by consultative examiner Dr. Nikita Dave. (T. at 461.)  Plaintiff reported issues related to diabetes, fibromyalgia, and pain, which she rated as a "4 to 12 out of 10."  (T. at 461-62.)

Examination indicated Plaintiff had some difficulty walking on heels and toes, could only squat 50%, and showed tenderness throughout the spinal regions.  (T. at 464.)  Trigger points were noted in the bilateral clavicles, lateral trapezii, lateral hips, medial knees, medial and lateral ankles, for a total of 12 trigger points.  (T. 464).  Sensation to light touch produced paresthesias on the plantar aspects of the feet without sensory loss, as well as decreased sensation on the dorsal toes bilaterally.  (T. 464.)  Plaintiff was diagnosed with "mental health," poorly controlled diabetes, asthma/chronic obstructive pulmonary disease, vitamin D deficiency, hypertension, possible diabetic neuropathy on and off, right ankle fracture history, left dorsal fracture per the claimant, still bothersome, fibromyalgia, and neck and low back pain.  (T. 465.)

Based on the examination, Dr. Dave opined:

> Mild to moderate limitations for prolonged standing, walking, squatting, climbing, lifting, carrying, pushing, and pulling due to right ankle fracture. There may be mild limitations for these types of things due to the fibromyalgia and myofascial pain. She may need to avoid ladders, heights, sharp, dangerous equipment and machinery due to paresthesias in the extremities such as low back pain and myofascial pain and fibromyalgia. There may be some need to avoid smoke, dust, fumes, inhalants, and chemicals due to prior history of asthma/COPD which has resolved. There may be mild to moderate limitations for prolonged standing, walking, lifting, carrying, climbing, ambulating on uneven surfaces due to right ankle fracture history.

(T. 465.)

On September 15, 2017, non-examining state agency psychological consultant Dr. L. Serbonich reviewed the evidence in the file, including Dr. Deneen's opinion, and opined Plaintiff is mentally capable of performing unskilled work in a low contact setting. (T. at 49.)

**B.    Treating Opinion**

On April 3, 2019, primary care provider Dr. Daniel Koretz completed a check-box medical statement in which he opined Plaintiff has a marked restriction in activities of daily living, marked difficulty in maintaining social functioning, marked deficiencies in concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner in work settings or elsewhere, a complete inability to function independently outside of her home due to panic attacks, and marked limitations in understanding, remembering, or applying information. (T. at 520-21.) He further opined Plaintiff is extremely impaired in her ability to maintain attention and concentration for extended periods; work in coordination with and proximity with others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general

public; respond appropriately to changes in the work setting; and travel in unfamiliar places or use public transportation.  (T. at 521-22.)  Plaintiff is markedly limited in her ability to understand and remember detailed instructions; carry out detailed instructions; and sustain an ordinary routine without special supervision.  (T. at 521-22.)  She also has moderate limitations in her ability to understand and remember short and simple instructions and make simple work-related decisions.  (T. at 521-22).

### C.    Auburn Community Hospital

Following the state agency evaluations, but prior to the ALJ's hearing and decision, Plaintiff sought treatment at Auburn Community Hospital on multiple occasions.  (T. at 524-1250.)

On December 28, 2017, Plaintiff was brought to the emergency department by New York State Police officers.  (T. at 949, 967.)  Plaintiff's son and boyfriend reportedly called the police after Plaintiff "had a panic attack at home and was unable to calm down."  (T. at 949.)  Plaintiff stated that she has "severe anxiety and panic attacks . . . [and] is not suicidal but wishes she was dead."  (T. at 967.)  Plaintiff completed a Columbia-Suicide Severity Rating and indicated that in the past month, she had wished she were dead or could go to sleep and not wake up, but had not actually had any thoughts about killing herself.  (T. at 976.)  Plaintiff was diagnosed with "[a]cute exacerbation of anxiety and depression, acute panic attack with destructive behavior." (T. at 972.)  A psychiatric exam revealed Plaintiff possessed fair judgement, insight, and attention span; normal speech; no abnormal or psychotic thoughts; and an intact decision making capacity.  (T. at 950-51.)  Plaintiff's affect was dysphoric and her mood was described as anxious and tearful.  (T. at 951.)  Plaintiff was deemed to be at no risk to herself or others, and was discharged home with outpatient services in place.  (T. at 953.)

Plaintiff returned to the emergency department on March 6, 2018, reporting stress and anxiety with her son.  (T. at 920-48.)  She denied suicidal or homicidal thoughts or any plan to harm herself.  (T. at 927-28.)  However, Plaintiff reported that she "[had] done things in the past to harm [herself] such as walking outside in [the] cold and walking down [the] street with no shoes."  (T. at 928.)  Plaintiff requested admission to the Behavioral Health Unit, but was informed that the unit was full.  (T. at 935.)  Plaintiff also asked to be admitted to the medical floor, but was discharged home after a psychological evaluation.  (T. at 930-35.)

On April 23, 2018, Plaintiff was brought to the emergency department by the New York State police after a physical fight with her son.  (T. at 624.)  Plaintiff's son thought she was suicidal, broke into Plaintiff's room, and the two engaged in a physical fight.  (T. at 624.)  Plaintiff reported that "[she] just want[ed] to go to sleep and not wake up."  (T. at 624.)  She was admitted on April 24, 2018.  (T. at 558.)  Plaintiff was reported to be depressed and very stressed at the behavioral issues of her son, who had recently been diagnosed with bipolar disorder.  (T. at 564.)  She stated her son had physically attacked her and explained his plan to put Windex in a blue Gatorade bottle for her to drink as a prank.  (T. at 564, 624.)  This incident caused her to develop some suicidal thoughts because she "thought that someday her son is going to hurt her" and those thoughts caused her to feel she should not live anymore.  (T. at 606.)  She reportedly said she wanted to take pills and never wake up but would never do so.  (T. at 605.)  Plaintiff stated, "I have anxiety panic attacks.  I am a very emotional person.  There are days I feel not be here anymore but that does not mean I will kill myself."  (T. at 564.)  A psychiatric exam revealed Plaintiff's judgment, insight, and attention span were fair; her concentration was normal; she had no abnormal or psychotic thoughts; and her memory and decision making capacity were intact.  (T. at 559-60.)  Plaintiff was discharged on April 27, 2018.  (T. at 558.)

Plaintiff was seen again in the emergency department on January 4, 2019, related to an assault form her son.  (T. at 524-57.)  She complained of bilateral knee, rib, and back pain.  Plaintiff reported she had been assaulted by her son.  (T. at 536-37.)  She was assessed with alleged physical assault, acute right knee contusion, [and] acute thoracic strain.  (T. at 543.)  Plaintiff was discharged later that day.  (T. at 540.)

### D.    Plaintiff's Testimony

Plaintiff testified at her hearing held on May 31, 2019, that she does not drive due to "really bad anxiety and panic attacks."  (T. at 1257.)  She testified she has "really bad" panic and anxiety, and that she "can't be" in public anymore.  (T. at 1262.)  She experiences "circumstantial anxiety" which is made worse by different situations.  (T. at 1263.)  When having a panic attack, she is overwhelmed, scared, upset, and cries.  (T. at 1263-64.)  She also break things, hyperventilates, gets agitated, and "can't see straight."  (T. at 1269.)  She sometimes feels angry.  (T. at 1264.)  She has anxiety every single day, and panic attacks two to three times per week.  (T. at 1264.)  She also has trouble concentrating and focusing.  (T. 1264.)  Plaintiff also testified that she is depressed every day, she wants to sleep all the time and feels defeated.  (T. at 1266.)  Three to four times per week, she cannot get out of bed.  (T. at 1265.)  On a typical day, she does not leave her house.  (T. at 1265.)  Sometimes, she goes weeks without leaving her home.  (T. at 1265.)

Plaintiff also testified about her psychiatric hospitalizations.  (T. at 1268-69.)  She stated she had been hospitalized "in the psych ward" twice—once in 2015 and once in April 2018.  (T. at 1268-69.)  Plaintiff stated, "I can't talk in public without crying.  It's kind of hard to go into work and do a job.  I forget what I'm talking about all the time.  I forget what I'm doing all the time."  (T. at 1269.)

## IV.    DISCUSSION

As noted, the ALJ determined Plaintiff has the RFC to perform light work except she can "perform only simple, routine tasks, can make only simple work-related decisions, and can interact with supervisors, coworkers, or the public no more than occasionally."  (T. at 15.) Plaintiff argues the RFC is not supported by substantial evidence.  (Dkt. No. 21-1.)

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, *2 (July 2, 1996)).  In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  To decide a disability claim, an ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion, however, "need not 'perfectly correspond with any of the opinions of medical sources cited in his decision.'"  *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 469 (W.D.N.Y. 2018) (quoting *Matta v. Astrue*, 508 F. App'x at 56).  Although the ALJ's RFC conclusion need not mirror any one medical source opinion, ALJs are not medical professionals, and, therefore, are "not qualified to assess a claimant's RFC on the basis of bare medical findings."  *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018).

### A.    Plaintiff's Mental RFC

With respect to Plaintiff's mental RFC, the ALJ considered and found the opinions of Dr. Deneen and Dr. Serbonich persuasive and Dr. Koretz's opinion not persuasive.  (T. 17-18.)

In reaching the mental RFC determination, the ALJ explained, "Dr. Deneen concluded that [Plaintiff] had no more than mild psychiatric limitation, aside from moderate limitation in regulating emotions, controlling behavior, and maintaining well-being, while Dr. Serbonich concluded that [Plaintiff] is mentally capable of performing unskilled work in a low contact setting."  (T. at 18.)  The ALJ found the opinions of both doctors to be persuasive, noting "Dr. Serbonich's opinion is supported by, and consistent with, a narrative rationale, which cites evidence from the record, while Dr. Deneen's opinion is well supported by the detailed findings from his mental status examination of [Plaintiff]."  (T. at 18.)

Plaintiff does not challenge the ALJ's assessment of any of these medical opinions. Instead, she argues the mental RFC is unsupported because the ALJ relied on the "stale" opinions of Drs. Deneen and Serbonich.  (Dkt. No. 21-1 at 12-16.)  Specifically, she claims the mental RFC determination is stale as the record clearly demonstrates that Plaintiff's mental condition deteriorated in the time after Dr. Deneen and Dr. Serbonich rendered their opinions, in September 2017, which is demonstrated by her multiple hospital visits due to her declining mental health.  The Court disagrees.

In general, a stale medical opinion does not constitute substantial evidence to support an ALJ's findings.  *See Laura Anne H. v. Saul*, No. 6:20-CV-397, 2021 WL 4440345, at *6 (N.D.N.Y. Sept. 28, 2021) (quoting *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016).  But a "gap of time between when an opinion is rendered and the disability hearing and the decision does not automatically invalidate that opinion."  *Michael G. v. Comm'r of Soc. Sec.*, No. 5:20-CV-605, 2021 WL 2457637, at *9 (N.D.N.Y. Jun. 16, 2021) (quoting *Majdandzic v. Comm'r of Soc. Sec.*, No. 17-CV-1172, 2018

WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018)).[2]  Rather, only "a 'meaningful change' in [the

plaintiff's] condition during the gap will do so." *Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-

CV-1313, 2021 WL 706645, at *9 (N.D.N.Y. Feb. 22, 2021) (quoting *Lamar v. Comm'r of Soc.

Sec.*, No. 18-CV-829, 2020 WL 548376, at *3 (W.D.N.Y. Feb. 4, 2020)).[3]  Thus, for example,

medical opinions are rendered "stale" by a "new significant diagnosis" or "significant

deterioration" in the plaintiff's condition.  *Andrea G. v. Comm'r of Soc. Sec.*, No. 5:20-CV-

01253, 2022 WL 204400, at *7 (N.D.N.Y. Jan. 24, 2022) (citing *Maxwell H.*, 2020 WL 1187610,

at *5).  "[R]emand is warranted where more recent evidence in the record 'directly contradict[s]

the older reports of [claimant's] functioning on which the ALJ relied' and the ALJ failed to

analyze the more recent evidence." *Laura Anne H.*, 2021 WL 4440345 at *6 (quoting *Blash v.

Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642 (2d Cir. 2020)).

Emergency room visits that post-date a state agency medical consultant's opinion do not

render a prior medical opinion stale without evidence that the visits were due to some

deterioration in a plaintiff's condition.  *See Majdandzic*, 2018 WL 5112273, at *4; *compare

Maxwell H.*, 2020 WL 1187610, at *6 (finding evidence of worsening of plaintiff's conditions

where he attempted to harm himself by cutting and overdosing on pills and acting on his suicidal

ideation when he had not previously done so), *with Majdandzic*, 2018 WL 5112273, at *4

(finding where, as here, depression was an ongoing issue for the plaintiff not a condition that

---

[2] *See also Brian Z. v. Comm'r of Soc. Sec.*, No. 5:20-CV-737, 2021 WL 3552525, at *8
(N.D.N.Y. Aug. 11, 2021); *Frederick C. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1078, 2021 WL
466813, at *12 (N.D.N.Y. Feb. 9, 2021); *James C. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1206,
2020 WL 6445907, at *15 (N.D.N.Y. Nov. 3, 2020); *Maxwell H. v. Comm'r of Soc. Sec.*, No.
1:19-CV-0148, 2020 WL 1187610, at *5 (N.D.N.Y. Mar.12, 2020).

[3] *See also Michael G.*, 2021 WL 2457637, at *9; *Brian Z.*, 2021 WL 3552525, at *8; *Frederick
C.*, 2021 WL 466813, at *12; *James C.*, 2020 WL 6445907, at *15; *Maxwell H.*, 2020 WL
1187610, at *5.

developed or worsened after the state agency consultant rendered his opinion and did not cause

the opinion to become stale where the state agency consultant "specifically acknowledged" that

the plaintiff alleged a disability due to depression and reviewed records that discussed the

plaintiff's depression).

Here, contrary to Plaintiff's assertion, the subsequent hospital records do not show that

Plaintiff's condition significantly deteriorated over the relevant period.  (T. at 524-1250.)  *See,*

*e.g.*, *Michelle B. v. Comm'r of Soc. Sec.*, No. 1:19-CV-710, 2020 WL 2616150, at *9 (N.D.N.Y.

May 21, 2020) (opinion is not stale merely because it pre-dates other evidence in the record,

where, as here, "the subsequent evidence does not undermine [the doctor's] conclusions).  As the

ALJ discussed:

> The record reflects an emergency department visit in December
> 2017 for a panic attack, but it was noted that [Plaintiff] was not
> engaging in any outpatient treatment.  In March 2018, the record
> reflects an emergency department visit in which [Plaintiff]
> requested admission for mental health services, but doctors
> discharged her to follow up with outpatient mental health services.
> The record reflects a hospitalization in April 2018 for a few days,
> after which doctors observed that a mental status examination was
> within normal limits and discharged her.

(T. at 16.)  The ALJ further explained:

> Clinical observations from treating sources regarding [Plaintiff's]
> mental status were generally within normal limits during the period
> at issue, aside from her mood and affect on some instances, and
> insight and judgement upon her April 2018 admission.  Clinical
> observations from treating sources regarding memory, thought
> process, and attention were consistently within normal limits.

(T. at 16-17.)

Thus, the Court is not persuaded that Plaintiff's subsequent hospitalization for her mental

condition evidences a deterioration in her condition rendering the September 2017 opinions of

Drs. Deneen and Serbonich stale.  *See, e.g.*, *Camille v. Colvin*, 104 F. Supp. 3d 329, 343-44

(W.D.N.Y. 2015) (rejecting plaintiff's argument that the mental RFC was unsupported because the ALJ improperly gave great weight to the allegedly "stale" opinion of a non-examining and non-treating state agency medical consultant; concluding that the ALJ did not err because, "although [the consultant's] opinion was based on only part of the overall administrative record, the treatment notes and opinions in the record before and after [the consultant's] opinion demonstrate substantially similar limitations and findings").  In this case, Dr. Deneen discussed Plaintiff's psychiatric and medical history, explaining his diagnoses and noting her inpatient hospitalizations, symptoms, and use of medications and outpatient services.  (T. at 454-60.)  Dr. Deneen also detailed Plaintiff's depressive symptoms, anxiety-related symptoms, and panic attack symptoms at the time of the September 11, 2017, examination.  (T. at 455.)  Dr. Serbonich reviewed Dr. Deneen's opinion in concluding Plaintiff is mentally capable of performing "unskilled work in a low contact setting."  (T. at 49.)

Medical records post-dating Dr. Deneen's September 2017 examination reveal she had experienced panic attacks and was unable to calm down, (T. at 564, 968, 949), but she had experienced panic attacks previously, and discussed those attacks with Dr. Deneen.  (T. at 455.) The hospital records at issue demonstrate Plaintiff was overwhelmed, stressed, anxious, and tearful, (T. at 949, 951), but Dr. Deneen's opinion acknowledged that she had experienced such symptoms.  (T. at 454-55.)  The hospital records reveal Plaintiff had wished that she were dead and felt that she should not live, (T. at 606, 967); however, Dr. Deneen was aware of and discussed Plaintiff's history of suicidal thoughts.  (T. at 455.)  Further, unlike in *Maxwell H.*, *supra*, the hospital records do not suggest that Plaintiff took affirmative steps toward acting on her suicidal thoughts.  (*See, e.g.*, T. at 976 (Plaintiff stated in the past month she had not actually had any thoughts of killing herself); 928 (Plaintiff denied plan to harm herself but reported she

"has done things in the past to harm [her]self such as walking outside in cold and walking down street with no shoes"); 564 (Plaintiff stated "'[t]here are days I feel not be here anymore, but that does not mean I will kill myself'").)  Thus, the evidence does not compel the conclusion that Plaintiff's hospital visits were due to a "worsening" of her condition.  *See Majdandzic*, 2018 WL 5112273, at \*4.

Nor was the ALJ required to obtain an updated consultative examination where, as here, evidence of Plaintiff's subsequent hospital visits would not change the state medical experts' opinions.  T. at 16-17 ("Clinical observations from treating sources regarding [Plaintiff's] mental status were generally within normal limits during the period at issue . . . ."));  *James C.*, 2020 WL 6445907, at \*13; *Michael G.*, 2021 WL 2457637, at \*9 ("An ALJ is not required to receive an updated report whenever new evidence is available, unless the additional evidence may change the state medical experts' opinions.") (citations omitted).

Moreover, Plaintiff "neither demonstrated additional [] limitations that undermine the [medical consultant's] opinion, nor identified any relevant evidence post-dating [that] opinion that the ALJ failed to consider."  *Laura Anne H.*, 2021 WL 4440345 at \*6; *Renalda R.*, 2021 WL 4458821, at \*9; *Majdandzic*, 2018 WL 5112273, at \*4 ("[T]he ALJ's opinion acknowledged and discussed record evidence that post-dated [the state agency medical consultant's] opinion . . .").  The record does contain an opinion with marked and extreme mental limitations from Plaintiff's primary care provider, Dr. Koretz, from April 3, 2019, but as the ALJ explained, and Plaintiff does not contest, Dr. Koretz's opinion is not persuasive because it did not provide any objective information, was not consistent with treatment notes, and Dr. Koretz is not a mental health specialist.  (T. at 18, 520-23.)

In sum, the medical evidence from Plaintiff's subsequent hospital visits "do[es] not change the picture of Plaintiff's mental functioning, such that the ALJ could no longer rely on the [state agency medical consultant's] opinion in formulating the RFC." *Renalda R.*, 2021 WL 4458821, at *9 (citing *Camille v. Colvin*, 652 Fed. App'x 25, 28 n.4 (2d Cir. 2016)). Because the evidence from Plaintiff's hospital visits following Drs. Deneen and Serbonich's opinions do not "directly contradict" those opinions, their opinions were not rendered stale. Thus, contrary to Plaintiff's argument, the ALJ did not base his assessment of Plaintiff's mental RFC on his own lay opinion, but considered the record as a whole. *See Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 483 (W.D.N.Y. 2021).

Accordingly, the opinions of Drs. Deneen and Serbonich constitute substantial evidence for the ALJ's mental RFC determination, and the ALJ did not err in relying on their opinions. Remand is not warranted on this ground.

### B.     Plaintiff's Physical RFC

Plaintiff's argument that the ALJ's physical RFC finding is unsupported by substantial evidence is similarly unavailing. As noted, the ALJ determined Plaintiff has the physical RFC to perform light work.[4]  (T. at 15.)  In making his physical RFC assessment, the ALJ found Dr. Dave's opinion persuasive, explaining it was supported by, and consistent with, the findings of Dr. Dave's examination that although she had tender points consistent with fibromyalgia, Plaintiff also had a normal gait, used no cane or assistive device, was able to rise from a chair without difficulty, maintained good range of motion, and had full strength in her extremities and

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567.

in her hands.  (T. at 17, 463-64).  Plaintiff does not challenge the ALJ's evaluation of the

supportability and consistency of Dr. Dave's assessment.  Instead, she argues the ALJ committed

reversible error by failing to accommodate the physical limitations opined by Dr. Dave relating

to her ability to squat, climb, lift, carry, push and pull.  (Dkt. No. 21-1 at 19-25.)  According to

Plaintiff, the ALJ failed to reconcile inconsistencies and relied on his own judgment and lay

interpretation of the medical evidence.  *Id*.  Again, the Court disagrees.

As the Commissioner acknowledges, there are some small discrepancies between the

RFC finding and Dr. Dave's assessment.  (Dkt. No. 24 at 13, *compare* T. at 15 *with* T. at 465.)

The gist of Plaintiff's argument is that the mild to moderate limitations to perform squatting,

climbing, lifting, carrying, pushing, and pulling assessed by Dr. Dave are not consistent with an

RFC for a full range of light work.[5]  Plaintiff is mistaken.

Courts in this circuit have consistently found that moderate limitations in a plaintiff's

ability to perform exertional activities are consistent with an RFC for light work.  *See Raymonda

C. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0178, 2020 WL 42814, at *4 (N.D.N.Y. Jan. 3, 2020)

("[A] 'moderate limitation' . . . is essentially equivalent to an ability to perform light work.")

(collecting cases); *see also April B. v. Saul*, 18-CV-0682, 2019 WL 4736243, at *5 (N.D.N.Y.

Sept. 27, 2019) ("[M]oderate limitations in standing and walking are consistent with light

work.") (citations omitted); *Moore v. Comm'r of Soc. Sec.*, 2017 WL 1323460, at *8 (N.D.N.Y.

Apr. 10, 2017) ("[M]oderate limitations for sitting, standing, walking, bending, climbing stairs,

and lifting or carrying heavy objects . . . [are] consistent with light work.") (citations omitted);

---

[5] As the Commissioner points out, the ALJ explicitly addressed the discrepancies regarding hazards and Atmospheric Conditions.  (Dkt. No. 24 at 13 n.7; T. at 17.)  Plaintiff does not advance—and thus waived—any challenge to the ALJ's evaluation of those issues.  *See Snyder C. Colvin*, No. 16-cv-0046, 2017WL 61946, at *6 n.1 (N.D.N.Y. Jan. 5, 2017).

18

*Martinez v. Comm'r of Soc. Sec.*, Civ. No 13-159, 2016 WL 6885181, at *13 (S.D.N.Y. Oct. 5, 2016), *report and recommendation adopted*, 2016 WL 6884905 (S.D.N.Y. Nov. 21, 2016) ("[M]oderate restrictions for lifting, pushing, pulling, overhead reaching, stooping, squatting, prolonged standing, and prolonged walking . . . are consistent with an RFC for light work."); *Michael V. v. Comm'r of Soc. Sec.*, No. 6:18-CV-0481, 2019 WL 4276722, at *2 (N.D.N.Y. Sept. 10, 2019) ("[M]oderate restrictions standing and ambulating . . . are reasonably accounted for in the light RFC[.]") (citations and internal quotations omitted); *Harris v. Comm'r of Soc. Sec.*, No. 09-CV-1112, 2011 WL 3652286, at *5 (N.D.N.Y. July 27, 2011) (finding "slight to moderate limitations in activities that require lifting, carrying, and reaching . . . consistent with the ALJ's conclusion that Plaintiff could perform light work"), *report and recommendation adopted*, 2011 WL 3652201 (N.D.N.Y Aug. 17, 2011); *Vargas v. Astrue*, No. 10-CV-6306, 2011 WL 2946371, at *12 (S.D.N.Y. July 20, 2011) (finding "moderate limitations for lifting, carrying, handling objects, and climbing stairs" consistent with RFC for full range of light work); *Hazlewood v. Comm'r of Soc. Sec.*, No. 12-CV-798, 2013 WL 4039419, at *7 (N.D.N.Y. Aug. 6, 2013) (doctor's opinion that plaintiff had "mild to moderate limitations in walking, pushing, and pulling" supported the "ALJ's determination that plaintiff could physically perform light work").

Thus, contrary to Plaintiff's assertion, the ALJ's determination that Plaintiff was limited to light work accounts for the mild to moderate physical limitations identified by Dr. Dave, and the RFC is consistent with that opinion. *See, e.g.*, *Crawford v. Astrue*, No. 13-CV-6068P, 2014 WL 4829544, at *23 (W.D.N.Y. Sept. 29, 2014) ("[A]lthough the ALJ did not discuss the moderate limitations assessed by [the state agency medical consultant], he incorporated moderate limitations into his RFC by restricting [Plaintiff] to jobs that" reflect that opinion.) (citing *Ryan v. Astrue*, 650 F. Supp. 2d 207, 217 (N.D.N.Y. 2009)) (additional citations omitted); *see Krystal*

*R. v. Comm'r of Soc. Sec.*, No. 20-cv-513, 2021 WL 3287776, at \*12 (N.D.N.Y. Aug. 2, 2021) (collecting cases that collect authority for the proposition that light work accommodates moderate limitations in standing, walking, lifting, carrying, pushing, and pulling).

Further, up to moderate limitations in reaching and other postural limitations, such as those opined by Dr. Dave, are generally considered consistent with an RFC limiting a plaintiff to light work. *Paula L. v. Comm'r of Soc. Sec.*, No. 20-CV-1224, 2021 WL 3549438, at \*7 (W.D.N.Y. Aug. 11, 2021) (collecting cases); *see Gurney v. Colvin*, No. 14-CV-688S, 2016 WL 805405, at \*3 (W.D.N.Y. Mar. 2, 2016) (ALJ's RFC for a full range of light work consistent with consultative examiner's opinion plaintiff had moderate limitations with respect to heavy lifting, bending, reaching, pushing, pulling, or carrying) (collecting cases).

Plaintiff points to cases that are premised on an ALJ cherry picking medical opinions that are favorable to the ALJ's finding while ignoring unfavorable opinions.  (*See* Dkt. No. 21-1 at 22-23.)  In this case, however, even assuming *arguendo* that the ALJ erred in failing to include specific limitations related to "mild to moderate limitations" for squatting and climbing and/or erred in failing to explain why he chose not to specifically incorporate certain limitations set forth in Dr. Dave's medical source statement, the Court agrees with the Commissioner that such error is harmless.  (*See* Dkt. No. 24 at 13-14.)  At the hearing, the vocational expert testified that a person with Plaintiff's background and assessed RFC could perform a significant number of jobs as, *inter alia*, advertising material distributor (DOT § 230.687-010) and marker (DOT § 209.587-034), neither of which require squatting, climbing, moving mechanical parts, or high exposed places.  *See* 1991 WL 1672162 (advertising material distributor), 1991 WL 671802 (marker).

While Plaintiff may disagree with the ALJ's physical RFC finding, Plaintiff has not shown that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) ("The question is not whether there is substantial evidence to support the plaintiff's position, but whether there is substantial evidence to support the ALJ's decision."). The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original). Accordingly, remand is not warranted on this ground.

## V.   CONCLUSION

Considering the foregoing, the Court finds the Commissioner's decision was based upon correct legal standards and substantial evidence supports the determination that Plaintiff was not under a disability within the meaning of the Social Security Act.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 21) is **DENIED**; and it is further

**ORDERED** that Defendants' motion for judgment on the pleadings (Dkt. No. 24) is **GRANTED**; and it is further

**ORDERED** that the Commissioner's decision denying Plaintiff's disability benefits is affirmed; and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED** and the Clerk of Court is directed to enter judgment and close this case.

**SO ORDERED.**

Dated: March 8, 2022
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge